UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | **2:24-cv-09498-MCS-PD** | Date | March 3, 2025 |
| Title | ***Santourian v. JPMorgan Chase Bank, National Association*** | | |

| | |
|---|---|
| Present: The Honorable | Mark C. Scarsi, United States District Judge |

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (IN CHAMBERS) ORDER RE: MOTION TO REMAND (ECF NO. 13) (JS-6)**

Plaintiff Zvard Santourian brought this labor class action against her former employer, Defendant JPMorgan Chase Bank, National Association, in Los Angeles County Superior Court, and Defendant removed it to this Court. (*See generally* Notice of Removal, ECF No. 1; Compl., ECF No. 1-1.) Plaintiff moved to remand, (Mot., ECF No. 13), and Defendant filed an untimely opposition brief, (Opp'n, ECF No. 15), which Plaintiff moved to strike, (Obj., ECF No. 17). The Court still considers Defendant's opposition and deems the motion appropriate for decision without oral argument or further briefing. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15. For the reasons below, the motion is granted.

**I.    BACKGROUND**

According to the complaint, Plaintiff is a California resident who worked for Defendant as a nonexempt employee. (Compl. ¶¶ 3–5, ECF No. 1-1.) Plaintiff alleges Defendant violated various California labor laws, asserting two claims: (1) failure to indemnify employees for employment-related losses/expenditures, Cal. Lab. Code § 2802, and (2) unfair business practices, Cal. Bus. & Prof. Code § 17200

et seq. (*Id.* ¶¶ 20–31.) Plaintiff seeks to represent a class of people who worked for Defendant in California. (*Id.* ¶¶ 3, 28.)

## II.    LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove an action to federal court if the federal court could exercise original jurisdiction over the action. 28 U.S.C. § 1441(a). If a defendant fails to meet its burden of establishing subject-matter jurisdiction, the suit must be remanded. *Id.* § 1447(c).

The Class Action Fairness Act of 2005 ("CAFA") provides federal subject-matter jurisdiction if (1) the proposed plaintiff class is not less than 100 members, (2) the parties are minimally diverse, and (3) the aggregate amount in controversy exceeds $5 million. *Id.* § 1332(d)(2), (5)(B). "Congress intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing S. Rep. No. 109-14, at 42 (Feb. 28, 2005)). Although "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014), the removing party still bears the burden of establishing federal jurisdiction, *see Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) ("The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal.").

Where the amount in controversy is not apparent from the face of the complaint, the removing party is "required to show the amount in controversy by a preponderance of the evidence." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022); *accord Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006). Generally, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," but where a plaintiff contests the amount in controversy put forth by the defendant, "[e]vidence establishing the amount is required." *Dart Cherokee Basin*, 574 U.S. at 89. The parties, thus, "may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

## III.   DISCUSSION

Plaintiff questions whether the CAFA amount-in-controversy threshold is satisfied, arguing that Defendant's estimates in the notice of removal rely on implausible assumptions about its potential liability. (Mot. 1.) The Court agrees. The amount in controversy is not clear from the face of the complaint. (*See generally* Compl.) In its notice of removal, Defendant submits that Plaintiff's first cause of action places $6,599,280 in controversy, (Notice of Removal ¶ 38), and attorneys' fees of approximately 25 percent of class recovery would push the amount in controversy to $8,249,100, (*id.* ¶¶ 41–42). In its opposition, Defendant posits that under an "[e]ven . . . more conservative calculation," the amount in controversy is at least $6,317,025. (Opp'n 16.) The Court concludes that Defendant's estimates of the amount placed in controversy by Plaintiff's claims rest on speculation and conjecture, which does not suffice to meet its burden to show jurisdiction lies in this Court.

Plaintiff's complaint alleges that Defendant "impermissibly pass[ed] business-related expenses to Plaintiff" and class members. (Compl. ¶ 22; *see id.* ¶¶ 20–27.) On this basis, Defendant used Plaintiff's discovery responses estimating the amount she accrued in monthly internet, cell phone, and electricity bills at her personal residence, added up the amount, and multiplied it by 25 percent, suggesting that 25 percent of all these costs are attributable to business expenditures. Defendant then used this amount, $70.96, and multiplied it by 93,000, which Defendant contends is an estimate of the number of months worked by nonexempt, non-branch, hourly employees who would be in the class. (Notice of Removal ¶ 38.) Without even reaching the phone and internet bill costs, the Court concludes that Defendant's 93,000-month multiplier and electricity bill calculations are inadequately supported, and without those estimates, the amount in controversy necessarily does not exceed $5 million.

### A.   93,000 Work Months

Plaintiff argues that Defendant's reliance on a 93,000–work month multiplier is speculative. (Mot. 4–5.) Plaintiff rightly points out that Defendant provides no basis for this figure in its notice of removal, and that the figure is overinclusive because she only seeks to represent nonexempt, remote employees, not nonexempt non-branch employees. (*Id.* at 5–6.) In response, Defendant provides evidence for the 93,000–work month calculation but fails to address whether the 93,000 work months account for *all* nonexempt, non-branch employees, or just the ones who

worked remotely. Indeed, Defendant's document specialist declares that he pulled the human resources data for all nonexempt, non-branch employees, but the declaration is silent as to whether they worked remotely, and if so, how often. (*See generally* Oliveira Decl., ECF No. 15-1.) This information is critical, as some of Defendant's subsequent calculations, like electricity costs, hinge on how much time the employee class spent at home.

All of Defendant's calculations fail because the 93,000–work month assumption is unjustified. However, for the sake of argument, the Court will use the 93,000 figure to analyze the electricity cost estimate, which is also flawed.

### B.    Electricity Costs

Plaintiff estimates she spends $153.82 for electric utility expenses every month. (Notice of Removal Ex. F, at 11, ECF No. 1-2.) Defendant estimates 25 percent of this figure may be attributed to reimbursable electricity used for work activities, resulting in an estimate of $38.45 per month per class member. (Notice of Removal ¶ 38.) Plaintiff disputes this assumption and contends the only electricity expense that could be attributable to business expenditures is the electricity cost of running a laptop computer. (Mot. 7–8.) She points out that her electricity bill encompasses the cost of using a variety of household utilities and electronics that are wholly unrelated to her work for Defendant. (*Id.* at 8.) Plaintiff offers various alternative calculations of the amount of electricity laptops typically consume and proposes a cost ranging from $1.36 to $2.68 per month for powering a laptop computer. (*Id.* at 12.) Defendant does not provide a persuasive rebuttal and instead tries to expand the scope of Plaintiff's business-related electricity use by highlighting the costs of powering her internet modem, lighting, and air conditioning. (Opp'n 13–14.) However, Defendant fails to explain why these costs would constitute 25 percent of Plaintiff's electricity bill.

Defendant then recalculates the electricity estimate using "more conservative assumptions," which assumes the number of hours a household consumes electricity during "awake" hours and multiplying that by an assumption that the class members worked an average of two days per week remotely. (*Id.* at 14–16.) Using this calculation, Defendant contends that the amount in controversy is still over $5 million. (*Id.* at 16.) However, Defendant again fails to convince the Court that *all* electricity expenditures during awake hours while working remotely may reasonably be assumed as reimbursable. What in Plaintiff's complaint places in controversy the expense of running her pool cleaner? (*See* Santourian Decl. ¶ 11, ECF No. 13-4.)

Defendant also fails to provide any basis upon which the Court may reasonably assume a typical employee works two days a week remotely or how this would impact Defendant's 93,000–work month figure.

Defendant's estimates of the value of the electricity expenditures are too speculative to be adopted, so the Court accepts Plaintiff's invitation to assign them a value of $1.36 to $2.68 per month. (Mot. 3.) Holding all of Defendant's other assumptions in place, the estimated total monthly reimbursable expenditures owed to each class member is $33.86 to $35.18. Multiplied by Defendant's dubious work month estimate, the claim places in controversy $3,148,980 to $3,271,740, well below the jurisdictional threshold.

### C.    Attorneys' Fees

Defendant also argues that the Court can assume without any supporting evidence that attorneys' fees in a wage and hour class action may be valued at 25 percent of the projected damages. (*See* Opp'n 16–17.) The Court declines to do so. *See, e.g.*, *Corral v. Staples Off. Superstore LLC*, No. 2:22-cv-01254-MCS-PVC, 2022 U.S. Dist. LEXIS 109084, at *9 n.6 (C.D. Cal. May 9, 2022) (Scarsi, J.) (rejecting similar argument and distinguishing *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 n.4 (9th Cir. 2020), on the basis that "the defendant in *Greene* submitted evidence showing the plaintiff's attorney would seek fees in an amount equal to or greater than 25 percent of the underlying amount in controversy"); *Blossom*, 2024 U.S. Dist. LEXIS 29719, at *15 (Scarsi, J.) (citing *Corral*). In any event, even 25 percent of a speculative estimate is still speculation, and a 25 percent award on the high-end estimate of the claim calculated in Section III(B) still would fall short of the jurisdictional threshold by nearly $1 million.

### D.    Summary

The Court does not reach Defendant's assumptions regarding the reimbursable cost of internet and electricity, (Notice of Removal ¶ 38), because the amount in controversy threshold is unmet given the speculative assumptions underlying Defendant's proposed work month multiplier, monthly reimbursable expenditures, and attorneys' fees.

Therefore, the Court cannot determine that the amount-in-controversy requirement for jurisdiction under CAFA is met. 28 U.S.C. § 1332(d). Remand is warranted. *Id.* § 1447(c).

## IV.    CONCLUSION

The Court grants the motion and remands this case to the Los Angeles County Superior Court, No. 24STCV08963. The Court directs the Clerk to effect the remand immediately and close the case.

**IT IS SO ORDERED.**